UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAYK MURADYAN,<br><br>   Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>   Defendant. | 1:16-cv-00760-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF HAYK MURADYAN AND AGAINST DEFENDANT NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY** |

I. <u>**INTRODUCTION**</u>

  Plaintiff, Hayk Muradyan ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to

---

[1] Pursuant to Fed. R. Civ. Pro. 25(d), Nancy A. Berryhill shall be substituted in for Carolyn W. Colvin, as Nancy A. Berryhill is now the acting Commissioner of Social Security.

1

Titles II and XVI of the Social Security Act. (Doc. 15). The Commissioner filed an Opposition and a Cross-Motion for Summary Judgment. (Doc.18). Plaintiff filed a reply. (Doc. 19). The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2] (*See,* Docs. 15, 18 and 19). Upon a review of the entire record, the Court finds that the ALJ did not apply the proper legal standards and the decision is not supported by substantial evidence. Accordingly, Plaintiff's appeal is GRANTED IN PART, and Defendant's Cross-Motion for Summary Judgment (Doc. 18) is DENIED.

## II. FACTS AND PRIOR PROCEEDINGS[3]

Plaintiff applied for DIB and SSI due to cardiac disease and degenerative disc disease on June 12, 2012, alleging disability beginning January 1, 2012. AR 236-247. The parties agree that the Plaintiff properly exhausted his administrative remedies and that the Appeals Council denied Plaintiff's appeal. Therefore, this appeal is a review of Administrative Law Judge Sharon Madsen's ("ALJ") decision issued on August 28, 2014, which is considered the Commissioner's final order. *See*, 42 U.S.C. §§ 405(g), 1383(c)(3). AR 20-30.

### A. Issues Presented

Plaintiff argues that the ALJ failed to properly evaluate the medical evidence because she improperly rejected Plaintiff's treating physician's opinion. He also contends that the ALJ improperly failed to incorporate several non-examining physicians' limitations into the residual functional capacity ("RFC") which if adopted, would have precluded him from performing the jobs the ALJ identified. Plaintiff requests that the Court award benefits, or alternatively, that the case be remanded for further proceedings. (Doc. 15, pgs. 6-13; Doc. 19, pgs. 3-5). The Commissioner argues that the ALJ's evaluation of the medical evidence was proper. Specifically, she contends the ALJ properly rejected the treating physician's opinion. Additionally, although the ALJ did not address some of the limitations outlined in the non-examining physicians' opinions, any error was harmless because Plaintiff can still perform the jobs identified by the judge. (Doc. 18, pgs. 3-9). As such, the ALJ's decision should be affirmed.

---

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. (*See* Docs. 9 and 11).

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

**B. Summary of the Medical Record**

The Court has reviewed the entire medical record. Relevant portions of the record will be referenced in the discussion where appropriate. AR 376-1207.

### III. THE DISABILITY STANDARD

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).

///

## IV. SUMMARY OF THE ALJ'S DECISION

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was insured through December 31, 2016, and that Plaintiff had not engaged in substantial gainful activity since January 1, 2012, the alleged onset date. AR 22. At step two, the ALJ identified cervical degenerative disc disease, lumbar degenerative disc disease, coronary artery disease, angina, hypertension, diabetes mellitus type II, obesity, tobacco use, and diabetic neuropathy as severe impairments. AR 22-23. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listing impairments in 20 C.F.R. Part 404 P, Appendix 1. AR 20-21.

The ALJ also determined that Plaintiff had the RFC to perform a modified version of light work as defined in 20 CFR §§ 404.1567(b) or 416.967(b). AR 21. Specifically, the ALJ found Plaintiff could lift/carry up to twenty pounds occasionally and ten pounds frequently; he could sit, stand, and walk for up to six hours in an eight hour work day; he could occasionally reach overhead, stoop, kneel, climb, crouch, and crawl; he could occasionally forcefully grasp or grip; he could frequently finger and feel; and he should avoid concentrated exposure to extreme cold, heat, height, and dangerous machinery. AR 24-28.

At step four, the ALJ found Plaintiff could not perform his past relevant work. AR 28-29. However, after considering a vocational expert's ("VE") testimony, at step five, the ALJ concluded that other jobs existed in significant numbers in the national economy that Plaintiff could perform, including a cashier II, Dictionary of Occupational Titles ("DOT") 211.462-010, a fast food worker, DOT 311.472-010, and a cafeteria attendant DOT 311.677-010. AR 29-30. The ALJ therefore concluded Plaintiff was not disabled. AR 30.

## V. THE STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence, and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a

conclusion." *Id.* Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## VI. DISCUSSION

### A. The ALJ's Evaluation of the Medical Evidence was Not Proper.

Plaintiff argues that the ALJ failed to properly evaluate the medical evidence because she did not give specific and legitimate reasons for rejected rejecting Dr. Narala's (Plaintiff's treating physician) opinion. She also contends that the ALJ improperly evaluated the non-examining physicians' opinions. Specifically, she argues that the ALJ gave great weight to Dr. Reddy, M.D. and Dr. Wong's, M.D. opinions, however, she excluded their restriction that Plaintiff is limited to frequent handling with his upper extremities from the RFC without explanation. Furthermore, Plaintiff argues that the ALJ completely ignored the opinions of Dr. Brode, M.D. and Dr. Haroun M.D. (two other non-examining physicians) who opined that Plaintiff would be limited to simple work, and that he is "able to handle public contact in a low demand manner." Plaintiff argues that these limitations preclude Plaintiff from working as a cashier II, a fast food worker, or a cafeteria attendant. (Doc. 15, pgs. 6-13; Doc. 19, pgs. 3-5).

Defendant argues that the ALJ's decision is supported by substantial evidence because the ALJ gave specific and legitimate reasons for rejecting Dr. Narala's opinion. Moreover, although the ALJ erred by not incorporating all of the non-examining physcians' opinions into the RFC, the jobs of a cafeteria worker and a cashier are consistent with Plaintiff's limitations based on the medical evidence and the vocational expert's testimony. Therefore, any error was harmless.

A review of the record reveals that the ALJ did not apply the proper legal standards and that the decision is not supported by substantial evidence. Although the ALJ's provided specific and legitimate reasons for rejecting Dr. Narala's opinion, the ALJ erred in her assessment of the non-examining physicians' opinions. This error was not harmless for the reasons set forth below.

### *1. Legal Standard*

The weight given to medical opinions depends in part on whether they are offered by treating, examining, or non-examining (reviewing) professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). When doing so, an ALJ may reject the

uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Ghanim v. Colvin*, 763 F. 3d 1154, 1161 (9th Cir. 2014); *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Ghanim*, 763 F. 3d at 1161; *Lester*, 81 F.3d at 830. The opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings, or other evidence in the record. *Thomas,* 278 F. 3d at 957. Such independent reasons may include laboratory test results or contrary reports from examining physicians, and plaintiff's testimony when it conflicts with the treating physician's opinion. *Leste*r, 81 F.3d at 831, *citing Magallanes v. Bowen*, 881 F.2d 751–755 (9th Cir. 1989).

*a. Dr. Narala's Opinion*

Plaintiff was treated by Dr. Narala, M.D., beginning in May 2013. AR 951-1038. On May 20, 2014, Dr. Narala noted that Plaintiff's symptoms included chest, neck, and back pain. He opined that Plaintiff could lift less than ten pounds frequently and twenty pounds occasionally; walk for one block; sit for one hour at a time in an eight hour day (but that he could sit for eight hours); and stand and walk for thirty minutes at one time. He also opined that Plaintiff would need to take a break every two hours for ten to fifteen minutes and recline or lie down in excess of the typical fifteen minute break and lunch break. He further opined that Plaintiff would be absent from work three or four times a month, and that he would not be capable of working an eight hour day, five days a week on a sustained basis. AR 1178- 1179. Dr. Narala's prior treatment notes also indicated that Plaintiff was disabled due to chronic angina, coronary heart disease, and chronic heart failure, and that Plaintiff was instructed to avoid strenuous manual work. "Symptom limited activity" was also recommended. AR 26; 983; 996; 1006; 1011.

After noting that a treating physician's opinion is entitled to appropriate consideration under SSR 96-2p, the ALJ gave Dr. Narala's opinion very limited weight because the opinion was overly restrictive given the doctor's normal physical examination findings. AR 26. In doing so, the ALJ noted that although Plaintiff had high blood pressure, he had normal heart rates, regular rhythms, intact distal pulses, and normal pulse oximetry. AR 26; 967; 973; 980; 987. The ALJ also described an examination in February 2014 (performed shortly before Dr. Narala's report) that revealed generally normal findings. AR 26; 995-996. These are specific and legitimate

reasons for rejecting Dr. Narala's opinion since the incongruity between a treating physician's opinion and his patient's medical records is a specific and legitimate reason to discount a treating physician's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Molina*, 674 F.3d 1111–1112 (9th Cir. 2012) (recognizing that a conflict with treatment notes is a germane reason to reject a treating physician's assistant's opinion); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009) (holding that a conflict with treatment notes is a specific and legitimate reason to reject a treating physician's opinion).

Plaintiff argues that the Dr. Narala's examination findings were not normal because Plaintiff tested positive for chest pain which resulted in a prescription for nitroglycerin; he consistently had high blood pressure; and he was taking Norco to treat osteoarthritis of the leg. (Doc. 15, pgs. 11-12). However, the ALJ acknowledged Plaintiff's high blood pressure and recognized this limitation. AR 25. Notwithstanding this diagnosis, the ALJ outlined with specificity several instances when the doctor's physical examination yielded normal results in spite of Plaintiff's impairments, which is a specific and legitimate basis supporting the ALJ's conclusion that Dr. Narala's report was overly restrictive. AR 26; 967; 973; 980; 987; 995-996. Although Plaintiff offers an alternative explanation of Dr. Narala's findings, this Court must defer to the ALJ's interpretation of the evidence if it is reasonable, as it is here. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) ("The court must consider the record as a whole and weigh 'both the evidence that supports and the evidence that detracts from the ALJ's' factual conclusions" and "'[i]f the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner"); *Thomas v. Barnhart*, 278 F.3d at 954 (Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld).

Additionally, the ALJ also gave great weight to Dr. Poonia's opinion, a state agency cardiologist who performed a consultative examination. AR 26; 922-924. The doctor performed a complete echocardiogram and did not see any evidence of physical limitations on account of cardiac disease. AR 923. The ALJ found this opinion was consistent with the overall medical record which the Court finds is a reasonable interpretation of the evidence. As the ALJ noted (AR 25), an EKG in August in 2013 showed normal sinus rhythm without ongoing ischemic abnormalities (AR 1052), and a May 2014 catheterization revealed stable coronary artery disease

with normal left ventricular end diastolic pressure with normal global systolic function. AR 1198-1200. Given the above, the ALJ's rejection of Dr. Narala's opinion was free of legal error and the decision supported by substantial evidence.

### b. *The Non-Examining Physician's Opinions*

Plaintiff argues that the ALJ failed to consider the limitations identified by Drs. Reddy, Wong, Brode and Haroun limiting him to simple work, frequent handling, and noting that he could handle public contact in a low demand manner. (AR 74; 78; 134; 137). He contends that this constitutes reversible error because Plaintiff cannot perform the occupations of a cashier II, a fast food worker, or a cafeteria attendant with these limitations. (Doc. 15, pgs. 6-13; Doc. 19, pgs. 3-5). The Commissioner concedes that the ALJ failed to consider these limitations, however, she argues the error was harmless because the ALJ identified occupations that the Plaintiff can perform. (Doc. 18, 5-9).

Preliminarily, the Court agrees with the parties that the ALJ committed error in this case. She evaluated the opinions of Drs. Reddy and Wong who rendered opinions regarding Plaintiff's physical limitations but failed to recognize that they also limited Plaintiff to frequent handling bilaterally. AR 28; 74; 134. Moreover, the ALJ completely ignored the opinions of Drs. Brode and Haroun regarding Plaintiff's mental limitations - namely that Plaintiff should be limited to simple tasks and that he is able to handle public contact in a low demand manner. AR 78; 137. The ALJ never mentioned these decisions and failed to provide any explanation for rejecting these medical source statements, which violates SSR 96-8p.

**B. The Error Regarding the Evaluation of Medical Evidence was Not Harmless.**

The Commissioner argues that this error is harmless because even if all of the above limitations were adopted by the ALJ, Plaintiff could still perform work as a cafeteria worker and a cashier.[4] (Doc. 18, 5-9). The Court disagrees because it is not clear that there is not a conflict between the VE's testimony and the DOT given the above limitations.

### 1. *Legal Standard*

If Plaintiff establishes that he is unable to perform his past work at step four, the burden shifts to the Commissioner at step five "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." *Johnson*

---
[4] The Commissioner makes no arguments regarding Plaintiff's ability to perform the work of a fast food worker.

*v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); see also 20 C.F.R. §§ 404.1560(g), 416.920(g). At this stage, the ALJ first assesses a claimant's "residual functional capacity," which is defined as the most that a claimant can do despite "physical and mental limitations" caused by his impairments and related symptoms. 20 C.F.R. §§ 404.1545, 416.945(a)(1). The ALJ then considers potential occupations that the claimant may be able to perform. See 20 C.F.R. §§ 404.1566, 416.966.

At step five, the ALJ may rely on the DOT and testimony from a VE to assess a claimant's ability to perform certain jobs in light of his residual functional capacity. 20 C.F.R. §§ 404.1566(e); 416.966(e), 404.1569; 416.969, 404.1566(d); 416.966(d)(1); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). As part of this process, occupational information provided by a VE should generally be consistent with the DOT. SSR 00-04, 2000 WL 1898704, at *2, (Dec. 4, 2000). Furthermore, the ALJ must resolve any apparent conflict between the VE's testimony and the DOT before relying on the VE's testimony in support of a disability determination. *Id*; *Zavalin v. Colvin*, 778 F. 3d 842, 846 (9th Cir. 2015); *Massachi v. Astrue*, 486 F. 3d 1149, 1153-1154 (9th Cir. 2007). When there is an apparent unresolved conflict between the VE and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE to support a determination or decision about whether the claimant is disabled. *Massachi*, 486 F. 3d at 1153. Neither the DOT nor the VE testimony automatically "trumps" when there is a conflict. *Id*. The adjudicator must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information. *Id*.

However, not all potential conflicts between a vocational expert's job suitability recommendation and the DOT will be apparent or obvious. *Lamear v. Berryhill*, 2017 WL 3254930 *3 (9th Cir. Aug, 1, 2017); *Gutierrez v. Colvin*, 844 F. 3d 804, 808 (9th Cir. 2016). In order for a difference between a VE's testimony and the DOT's listings to be fairly characterized as a conflict, it must be obvious or apparent. *Lamear*, 2017 WL 3254930 at *3; *Gutierrez*, 844 F. 3d at 808. This means that the testimony must be at odds with the DOT's listing of job requirements that are essential, integral, or expected. *Lamear*, 2017 WL 3254930 at *3; *Gutierrez*, 844 F. 3d at 808. Where the job itself is a familiar one, less scrutiny by the ALJ is required. *Lamear*, 2017 WL 3254930 at *3; *Gutierrez*, 844 F. 3d at 808. Thus, an ALJ must ask

9

follow up questions of a vocational expert only when the expert's testimony is either obviously or apparently contrary to the DOT. However, the obligation doesn't extend to unlikely situations or circumstances. *Lamear*, 2017 WL 3254930 at *3; *Gutierrez*, 844 F. 3d at 808. Thus, the requirement for an ALJ to ask follow up questions to determine if an actual conflict exists is fact-dependent.

> *a. A Conflict Exists Between Plaintiff's RFC and the DOT for the Jobs Identified by the ALJ*

The Commissioner argues that Plaintiff could perform the jobs identified by the ALJ. Specifically, she contends that the Plaintiff could still work as a cashier II and a cafeteria worker even if the ALJ incorporated all of the limitations into the RFC. The Court disagrees.

A review of the DOT reveals that Plaintiff would be unable to perform the duties of a cashier II and thus, a conflict is apparent. Specifically, a cashier II job is classified as reasoning level 3. DOT at 211.462-010,1991 WL 671840. An individual who is limited to simple work is unable to perform reasoning level 3 occupations such as cashier II. *See, Zavalin,* 778 F.3d at, 846-848 (conflict exists between the limitation to simple work and the demands of level 3 reasoning per the DOT).

Similarly, Plaintiff would be unable to work as a fast-food worker as this occupation requires "constant" handling. The DOT defines the term "constant" as existing 2/3 or more of the time. DOT at 311.472-010, 1991 WL 672682. This would exceed Drs. Reddy and Wong's limitation which restricted Plaintiff to "frequent" handling. The term "frequent" is defined as existing from 1/3 to 2/3 of the time, creating an apparent conflict. *Id*.

Finally, whether Plaintiff would be able to work as a cafeteria attendant is less clear. Drs. Brode and Haroun noted that that Plaintiff is "able to handle public contact in a low demand manner." AR 78; 137. The DOT requires that a cafeteria worker carry trays from food counters to tables for cafeteria patrons; carry dirty dishes to the kitchen; wipe tables and seats; set tables; may wrap clean silver in napkins; and may circulate among diners and serve coffee. DOT at 311.677-010, 1991 WL 672694.

Given these job duties, the Court cannot conclude that it is likely and foreseeable that a person who is able to handle the public in a low demand manner would be able to perform the duties of a cafeteria attendant. While many of these duties such as carrying dirty dishes to the

kitchen, wiping tables and seats, and wrapping clean silverware in napkins, does not require public contact, a cafeteria worker carries trays from food counters to tables for patrons and may circulate among diners and serve coffee. Arguably, circulating among diners to serve coffee is not necessarily a required duty as noted by the term "*may*" in the description. However, it is clear that the DOT requires that a cafeteria worker carry trays to patrons, which does require interaction with the public. The ALJ would have had to address this apparent conflict by obtaining an explanation from the VE, and then determine if Plaintiff could perform this job. SSR 00-4p, 2000 WL 1898704 (S.S.A. 2000). Therefore, the Court cannot conclude that the failure to properly assess the non-examining medical opinions was harmless error. An ALJ's error is only harmless where it is "inconsequential to the ultimate nondisability determination." *Carmickle v. Comm'r of Social Security*, 533 F.3d at 1162; *Tommasetti*, 533 F.3d at 1038; *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir.2006); *Stout*, 454 F.3d at 1055. Given the need for additional VE testimony, that is not the case here. Therefore, the case must be remanded.

## VII. REMAND FOR FURTHER ADMINSTRATIVE PROCEEDINGS

The Court must determine whether this action should be remanded to the Commissioner with instructions to immediately award benefits, or whether this action should be remanded to the Commissioner for further administrative proceedings. Remand for further proceedings is appropriate when an evaluation of the record as a whole creates serious doubt as to whether the claimant is in fact disabled. *Trevizo v. Berryhill*, 862 F. 3d 987, 1004-1005 (9th Cir. 2017); *Garrison v. Colvin*, 759 F. 3d 995, 1021 (9th Cir. 2014). Conversely, a court should remand with for an award of benefits when: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id*. at 1020. Even if all three of these criteria are met, the Court can retain flexibility in determining an appropriate remedy. *Brown-Hunter v. Colvin*, 806 F. 3d 487, 495 (9th Cir. 2015).

Here, remand for further proceedings is appropriate so the ALJ can properly evaluate the medical evidence with regard to the non-examining physicians' opinions. The ALJ needs to either properly reject all of the above limitations, or alternatively, devise a new RFC that includes the

appropriate limitations and complete a new step five analysis. Accordingly, the case will be remanded so that the ALJ can more fully develop the record.

///

**VIII.  CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is not based on proper legal standards.  Accordingly, this Court GRANTS Plaintiff's appeal IN PART, and DENIES the Commissioner's Cross-Motion for Summary Judgment. The case is REMANDED to the Commissioner for further proceedings consistent with the instructions contained in this order. The Clerk of this Court is DIRECTED to enter judgment in favor of Hayk Muradyan, and against Nancy A. Berryhill, Commissioner of Social Security, and close this action.

IT IS SO ORDERED.

Dated:   **August 31, 2017**                              **/s/ Gary S. Austin**
                                                                              UNITED STATES MAGISTRATE JUDGE